# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL MCMASTER, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 16-5208 |
| v. | : | OPINION |
| CITY OF NORTH WILDWOOD, | : | |
| POLICE OFFICER BRYAN SKILL, | | |
| POLICE OFFICER CLIFFORD MASSIE, | : | |
| POLICE OFFICER ERIC NEVIL, | | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion to dismiss the
Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).
The Court has reviewed the submissions and decides the matter based on
the briefs pursuant to Fed. R. Civ. P. 78(b). For the reasons stated here,
Defendants' motion will be granted in part and denied in part.

## Jurisdiction

This is a civil action over which the district court has original
jurisdiction based on a question "arising under the Constitution, laws, or
treaties of the United States." See 28 U.S.C. § 1331. Plaintiff Michael
McMaster asserts a violation of his civil rights pursuant to 42 U.S.C. § 1983.
With respect to Plaintiff's state law claims, this Court has supplemental
jurisdiction pursuant to 28 U.S.C. § 1367(a).

## Background

This matter stems from an incident that occurred at approximately 5:30 a.m. on November 19, 2015 between Plaintiff and three North Wildwood police officers – Clifford Massie, Eric Nevil, and Bryan Skill – on the sidewalk outside Plaintiff's parents' house in North Wilwood, New Jersey. Plaintiff had been arguing with his girlfriend when the officers arrived on the scene. A discussion ensued during which the officers advised Plaintiff and his girlfriend to return to their respective houses. Plaintiff allegedly pleaded with his girlfriend not to leave. Next, he allegedly reached for her bag and the officers "violently threw him to the ground." (Am. Compl. ¶ 14.) Plaintiff alleges that he did not resist, but was "compliant," nonetheless one, two, or three of the officers "violently and maliciously jumped on Plaintiff's back with their knees with such force that it caused Plaintiff's spleen to rupture and to fracture several ribs." (Am. Compl. ¶ 15.) He was transported to jail, then by ambulance to the hospital, and finally by helicopter to a trauma center. As a result, Plaintiff was hospitalized for ten days.

Plaintiff has filed a Complaint in this Court claiming excessive force by the individual officers and <u>Monell</u> liability by North Wildwood. State law tort claims pled originally have been conceded through this motion.

# Applicable Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough

---

[1]"Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted).

facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).  "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness."  Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald

_____

[2]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred.  "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  Id.

assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). <u>Accord</u> <u>Iqbal</u>, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). <u>See also</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." <u>Twombly</u>, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" <u>Iqbal</u>, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## **Discussion**

**42 U.S.C. § 1983**

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

See 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

**The Fourth Amendment**

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and persons or things to be seized.

A Fourth Amendment excessive force claim calls for an evaluation of whether police officers' actions are objectively reasonable[1] in light of the

---

[1] While the question of reasonableness is objective, the court may consider the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S.

facts and circumstances confronting him. <u>Graham v. Conner</u>, 490 U.S. 386, 397 (1989). The reasonableness of a seizure is assessed in light of the totality of the circumstances. <u>Abraham v. Raso</u>, 183 F.3d 279, 289 (3d Cir. 1999).

## Municipal Liability

A municipality is not liable under 42 U.S.C. § 1983 on a *respondeat superior* theory. <u>Monell v. Dept. Soc. Servs. of New York</u>, 436 U.S. 658, 691 (1978). However, a government entity may be liable for its agent's actions upon a demonstration that a policy or custom of the municipality caused, or was a "moving force" behind, the alleged violation of Plaintiff's rights. <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (quoting <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981)); <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 971 (3d Cir. 1996). Thus, in order to prevail against the government entity, "[a] plaintiff must identify the challenged policy, attribute it to the city

---

at 396. In a claim for excessive force, "the central question is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" <u>Brooks v. Kyler</u>, 204 F.3d 102, 106 (3d Cir. 2000) (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 7 (1992)). Furthermore, appropriate attention should be given "to the circumstances of the police action, which are often 'tense, uncertain, and rapidly evolving.'" <u>Groman v. Township of Manalapan</u>, 47 F.3d 628, 634 (3d Cir. 1995) (quoting <u>Graham</u>, 490 U.S. at 396). <u>See also</u> <u>Graham</u>, 490 U.S. at 396-97 (analyzing reasonableness of use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight").

itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Parkesburg, 736 F.2d 903, 910 (3d Cir. 1984).

A plaintiff cannot seek to hold a municipality liable for damages where the officer has inflicted no constitutional harm. Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 217 n.12 (3d Cir. 2009) (citing City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986)). Therefore, before addressing deliberate indifference and causation, a court must first address whether there was a constitutional violation at all. See Grazier, 328 F.3d at 124 ("municipal liability requires constitutional harm"); cf., Thomas, 749 F.3d at 223 ("The parties do not challenge the existence of . . . a constitutional violation on appeal.").

Moreover, the United States Supreme Court has held that "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). As such, an employee of the state named as a defendant in a civil rights action may be held liable only if that person has personal involvement in the alleged wrongs and is sued in their personal capacity. See Hafer v. Melo, 502 U.S. 21, 31 (1991) ("state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983").

## Qualified Immunity

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Id. (internal quotation

omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 743 (2011) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." <u>Saucier</u>, 533 U.S. at 202 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Couden v. Duffy</u>, 446 F.3d 483, 492 (3d Cir. 2006). "If the officer's mistake as to what the law requires is reasonable," the officer is entitled to qualified immunity. <u>Id.</u> (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." <u>Malley</u>, 475 U.S. at 341. <u>See also</u> <u>Brosseau v. Haugen</u>, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.). Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. <u>See</u> <u>Beers-Capital v. Whetzel</u>, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

**Analysis**

To the extent that Plaintiff has sued the Defendant police officers in their official capacities, these are really claims against the police department and, in turn, the municipality and, as such, must be dismissed. See Hafer, 502 U.S. at 25 ("official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Accordingly, the Court is left with the claims against the officers in their individual capacities.

The Court finds that excessive force has been adequately pled against the individual officers because Plaintiff alleges that he was compliant when taken to the ground. Therefore, the use of force that followed plausibly could have been excessive. Plaintiff's claim of excessive force will not be dismissed at this stage simply because he has not alleged which officer took each of several actions alleged. Although the facts pled are not fully comprehensive, they serve to highlight the favorable inferences Plaintiff enjoys on a motion to dismiss.

Next, the Court recognizes that a finding of qualified immunity should be made at the earliest possible point in a case. A finding that Defendants are entitled to qualified immunity on this motion again would discount the favorable inferences that advance Plaintiff's claims, predicate a

disposition on a limited factual record, and implicate the Third Circuit's cautionary directive that dismissal predicated upon qualified immunity at the motion to dismiss stage "is generally unwise . . . as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009). As a result, the Court finds that qualified immunity does not attach at this time.

As to the Monell claim, the Court finds that Plaintiff has made only conclusory allegations devoid of a factual basis to find a policy or practice or lack of training or discipline to implicate the municipality. Despite Plaintiff's argument, the Court will not infer lack of training or discipline by measuring the severity of Plaintiff's injuries.

### Conclusion

Accordingly, Defendants' motion to dismiss will be granted as to the City of North Wildwood and the individual Defendants in their official capacities. The Court denies dismissal of the Amended Complaint against the Defendant police officers in their individual capacities. An Order will be entered.


Dated: June 1, 2017         /s/ Joseph H. Rodriguez
                                JOSEPH H. RODRIGUEZ
                                U.S.D.J.